**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**TROY D. McRAE, Jr.,**

**Plaintiff,**

**v.**

**LT. LENDSEY, et al.,**

**Defendants.**

**Civil Action 2:21-cv-4752**
**Judge Michael H. Watson**
**Magistrate Judge Kimberly A. Jolson**

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 21). For the reasons that follow, the Undersigned **RECOMMENDS** the Motion be **GRANTED in part and DENIED in part**.

## I. BACKGROUND

In brief, pro se Plaintiff alleges that Defendants violated his constitutional rights while he was incarcerated at Ross Correctional Institute. (*See generally* Doc. 20). Because this matter is before the Court on a Motion to Dismiss, the following facts are drawn solely from Plaintiff's allegations. (*See* Amended Complaint, Doc. 20).

On July 15, 2021, Plaintiff attended a Rules Infraction Board hearing to resolve a conduct report against him. (Doc. 20, ¶ 1). Plaintiff wanted the opportunity to show that he did not break a rule and thought the individual who could explain what happened, Captain Yates, would attend. Specifically, Plaintiff believed Captain Yates would provide the video footage supporting Plaintiff's version of events. (*Id.*). When Captain Yates did not appear, Plaintiff fell to his knees and pleaded that Captain Yates be called to the hearing. (*Id.*). Defendant Lendsey picked Plaintiff up off the floor and escorted him into "the open dayroom[.]" (*Id.*, ¶ 2). Once in the other room, Plaintiff again fell to the floor and demanded Captain Yates or the Warden be called. (*Id.*, ¶ 3).

In response, Defendants Lendsey and Tedesco grabbed Plaintiff and lifted him up from the floor. (*Id.*, ¶¶ 4–5). During this process, Plaintiff says Defendant Lendsey "took hold of [his] fingers and began to bend them backward in an attempt to inflict pain on [Plaintiff]." (*Id.*, ¶ 5). Plaintiff says he "felt the bone in [his] left finger . . . dislocate," and says his finger was broken. (*Id.*). During the entire sequence of events, Plaintiff's hands were "cuffed behind [his] back[.]" (*Id.*, ¶ 3). Plaintiff was then returned to his cell where he says Defendants Tedesco and Lendsey forcibly removed his handcuffs by pulling his hands through the cuff-port which hurt his wrist and right thumb. (*Id.*, ¶¶ 6–8). While in his cell, Plaintiff's left hand and right thumb began to swell, and he could not make a fist. (*Id.*, ¶ 8). Plaintiff sought medical attention. (*Id.*, ¶ 10). After his medical visit, Defendant Lendsey placed him in an isolated cell, to "further punish[ ]" him. Plaintiff says he was then pepper-sprayed[1] and forced to go without water and belongings overnight. (*Id.*, ¶ 11). To this day, Plaintiff says he experiences ongoing pain in his left hand, "his hand has healed in the broken position[,]" and he "can no longer make a tight fist[.]" (*Id.*, ¶¶ 13, 15).

Plaintiff filed this lawsuit, and Defendants have moved to dismiss Plaintiff's claims. (Doc. 21). The Motion (Doc. 21) has been fully briefed (Docs. 22, 24) and is ripe for review.[2]

## II. STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663–64, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing

[1] Specifically, Plaintiff says he was "mased." (Doc. 20, ¶ 11).

[2] Plaintiff filed a sur-reply without leave of court. (Doc. 25). Leave of court is required to file a sur-reply. *See* S.D. Ohio Civ. R. 7.2(a)(2). Accordingly, Plaintiff's sur-reply (Doc. 25) is not properly before the Court and is not considered in resolving this Motion (Doc. 21). Further, Plaintiff does not advance any material arguments in the sur-reply that would affect the resolution of this Motion.

the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 556–57. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555*; see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (noting that a plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P. 8(a)(2)'s "short and plain statement" rule, the law "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Further, although pro se complaints are construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Said differently, "[t]he requirement for liberal construction . . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012 (dismissing pro se plaintiff's "incredibly vague" complaint), *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). The complaint must still "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

## III. DISCUSSION

Plaintiff has alleged two violations of his constitutional rights against Defendants Lendsey and Tedesco: his Fourteenth Amendment right to due process for failure to follow ODRC policy (*Id.*, ¶¶ 5, 16); and his Eighth Amendment right to be free from cruel and unusual punishment for use of excessive force. (*Id.*, ¶¶ 5–7, 11). His excessive force claim spans three incidents: (1) Defendant Lendsey bending his fingers backwards, (2) Defendants Lendsey and Tedesco pulling his hands through the cuff-port; and (3) Defendant Lendsey pepper-spraying him. (*Id.*). Defendants move to dismiss, arguing that (a) sovereign immunity bars Plaintiff's claims against Defendants in their official capacities; (b) failure to follow internal policy is not a Fourteenth Amendment violation; (c) there is no Eighth Amendment violation because force was applied in a good faith attempt to maintain discipline and the injury was not sufficiently serious; and (d) Defendants are entitled to qualified immunity. (*See* Doc. 21).

The Undersigned addresses each of Defendants' arguments in turn. Ultimately, the Undersigned **RECOMMENDS** that Plaintiff be allowed to proceed only on his Eighth Amendment claims against Defendant Lendsey, in his personal capacity, as those claims relate to Plaintiff's finger being bent backward and Plaintiff being pepper-sprayed. In that respect, it is **RECOMMENDED** that the Motion to Dismiss (Doc. 21) be **DENIED**. For all other claims, the Undersigned **RECOMMENDS** the Motion to Dismiss (Doc. 21) be **GRANTED**.

### A. Sovereign Immunity

As noted, Plaintiff does not make clear in his Amended Complaint whether he is suing Defendants in their individual or official capacities. (*See* Doc. 20). In his initial Complaint, Plaintiff indicated he was suing Defendants in their individual capacities only. (Doc. 5 at 2). But because the Amended Complaint is not entirely clear (*see* Doc. 20)—and Defendants argue official

capacity claims should be barred (Doc. 21 at 11–12)—the Undersigned briefly addresses claims against Defendants in their official capacity.

"State sovereign immunity generally bars damages actions against states from proceeding in federal court. This immunity also generally applies to state agents and instrumentalities, including state officials sued in their official capacities." *Kanuszewski v. Mich. Dep't of Health & Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) (internal citations and quotations omitted). To the extent Plaintiff sues Defendants in their official capacities for monetary damages, state sovereign immunity bars those claims. Accordingly, the Undersigned **RECOMMENDS** dismissal of any official capacity claims.

**B. Fourteenth Amendment**

Plaintiff alleges that Defendants violated his Fourteenth Amendment right to due process by failing to follow ODRC policy, which allegedly requires correctional officers to call someone to record incidents which may result in the use of force and to file a Use of Force Report. (Doc. 20, ¶¶ 4, 16). Defendants argue that the "failure of prison officials to follow internal policies is not a constitutional violation[.]" (Doc. 21 at 6). The Undersigned agrees.

Even if Defendants failed to follow ODRC policy, that failure is "not in and of itself a constitutional violation." *McDougald v. Davis*, No. 2:16-CV-545, 2018 WL 1899229, at *7 (S.D. Ohio Apr. 20, 2018); *see also Robison v. Coey*, No. 2:15-CV-944, 2015 WL 5437175, at *10 (S.D. Ohio Sept. 14, 2015) (citing *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007)) ("An alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation."); *Haight v. Thompson*, No. 5:11CV–P118–R, 2011 WL 4473143 at *3 (W.D. Ky. Sept. 26, 2011) ("A prison official's failure to follow internal rules and regulations does not alone state a constitutional violation..."). Section 1983 does not provide a remedy for alleged violations of state laws or regulations. *See Williams v. Burgess*, No. 5:21-cv-99, 2021 WL

5816830, at *4 (W.D. Ky. Dec. 7, 2021) (citing *Laney*, 501 F.3d at 580 n.2) ("The purpose of § 1983 is to remedy violations of federal law, not state law."); *Lewellen v. Metro. Gov't of Nashville*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). And "[c]ourts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure." *White v. Perron*, No. 2:20-cv-247, 2021 WL 3855589, at *9 (W.D. Mich. Aug. 30, 2021) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) and other cases). Thus, the "failure to comply with [a state] administrative rule or policy does not itself rise to the level of a constitutional violation." *Williams v. Burke*, No. 2:08-cv-123, 2009 WL 1788374, at *1 (W.D. Mich. June 18, 2009) (collecting cases).

So, Plaintiff's allegations that Defendants failed to follow ODRC policies do not independently state a claim for a violation of federal law that can be pursued in a § 1983 action. *See Burgess*, 2021 WL 5816830, at *4 ("to the extent that Williams identifies state policies as conferring a right for a § 1983 claim, the Court dismisses that claim"). And it is **RECOMMENDED** that Defendants' Motion to Dismiss as to Plaintiff's Fourteenth Amendment claims be **GRANTED**, and Plaintiff's Fourteenth Amendment claims against Defendants be **DISMISSED**.

### C. Eighth Amendment

The Undersigned comes to a different conclusion as to Plaintiff's Eighth Amendment claims. Plaintiff alleges three incidents in which he says excessive force was used in violation of the Eighth Amendment by Defendants Lendsey and Tedesco: (1) When Defendant Lendsey bent his fingers backwards (Doc. 20, ¶ 5); (2) when Defendants Lendsey and Tedesco pulled his hands through the cuff-port (*id.*, ¶ 6–7); and (3) when Defendant Lendsey pepper-sprayed him (*id.*, ¶ 11).

Because Plaintiff's Eighth Amendment claim is brought under § 1983, he must "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). In their Motion to Dismiss, Defendants do not contest that they were acting under color of state law. (*See generally* Doc. 21 at 12–14). Instead, they maintain that Plaintiff was not deprived of a constitutional right. (*Id.* at 7–11). Notably, Defendants move to dismiss only two of Plaintiff's three excessive force claims—his fingers being bent backwards, and his hands being pulled through the cuff-port. (*Id.*). Defendants do not address the alleged use of pepper-spray. (*See id.*).

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). "[T]he Supreme Court set forth the standard for analyzing excessive force claims under the Eighth Amendment: 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

"The subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts evaluate "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* (quoting *Hudson*, 503 U.S. at 6). In making this inquiry, the Court should consider the need for the use of force, the relationship between that need and the type and amount of the force used, the

threat reasonably perceived by the official, the extent of the injury inflicted, and any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).

"The objective component requires the pain inflicted to be sufficiently serious." *Rafferty*, 915 F.3d at 1094 (citing *Williams*, 631 F.3d 383). This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 104). "The seriousness of the injuries [is] not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not significant injury is evident.'" *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 9). But "[t]hat is not to say that every malevolent touch . . . gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. The Eighth Amendment does not protect against "*de minimis* uses of physical force[.]" *Rafferty*, 915 F.3d at 1094 (quoting *Hudson*, 503 U.S. at 9–10).

Plaintiff alleges three separate incidents of excessive force. The Court evaluates each incident separately to determine whether Plaintiff's pleadings survive Defendants' Motion to Dismiss.

*1. Fingers bent backwards*

In Plaintiff's first claim, he alleges Defendant Lendsey lifted him up off the floor and then "took hold of [his] fingers [on his left hand] and began to bend them backward in an attempt to inflict pain upon me." (Doc. 20, ¶ 5). This was done while Plaintiff's hands were cuffed behind his back and he was not resisting. (*Id.*, ¶¶ 3, 5). Plaintiff says he immediately felt the bone dislocate and that his finger was broken. (*Id.*, ¶ 5). Soon after, he was in pain, his hand was swollen, and he could not make a fist. (*Id.*, ¶ 8). Plaintiff says the injury still ails him—he has ongoing pain, his hand healed in the broken position, and he cannot make a tight fist. (*Id.*, ¶ 13,

15, 16). The Undersigned concludes that Plaintiff has satisfied his pleading obligations for this incident.

First, Plaintiff has sufficiently pled the subjective component. He alleges Defendant Lendsey bent his fingers "in an attempt to inflict pain," despite Plaintiff's lack of resistance and his hands being cuffed behind his back. (*Id.*, ¶¶ 3, 5). Defendant Lendsey's actions, if true, suggest that the force used was unnecessary and was not applied in a good faith effort to maintain or restore discipline, but rather to cause harm. At this stage, this is enough to establish Defendant Lendsey's culpable state of mind and satisfy the subjective component of this excessive force claim.

Defendants argue that Plaintiff's pleadings are insufficient because he "does not allege that force was used maliciously and sadistically for the purpose of causing harm . . . ." (Doc. 21 at 9). They say exerted force was used to maintain and restore discipline. (*Id.*). While Plaintiff acknowledges that he fell to the floor, which necessitated officers pick him up, Plaintiff's claim is that Defendant Lendsey used force beyond what was needed to restore discipline. Particularly, Plaintiff says Defendant Lendsey intentionally hurt him when Plaintiff was not resisting and was handcuffed. Essentially, Defendants dispute the facts. That is premature at this stage, and Defendants' argument fails.

Turning to the objective component, Plaintiff again has done enough. He says that as a result of Defendant Lendsey bending his fingers back, he suffered a broken bone, his hand healed improperly, he cannot make a tight fist, and he suffers ongoing pain. (Doc. 20, ¶¶ 5, 6, 8, 13, 15, 16). Construed in a light favorable to Plaintiff, this allegation is sufficiently serious to satisfy the objective component of the excessive force claim.

Defendants respond that Plaintiff's injury is *de minimis*. (Doc. 21 at 10). They say Plaintiff acknowledges that an x-ray indicated there was no fracture and that his medical complaints are

unsupported. Again, Defendants contest facts. Despite acknowledging that an x-ray indicated his finger was not broken (Doc. 20, ¶ 14), Plaintiff maintains his finger was broken throughout the Amended Complaint. (*Id.*, ¶¶ 5, 6, 13, 16). For purposes of a motion to dismiss, the Court takes Plaintiff's allegation of a broken finger as true. And a broken finger is not a *de minimis* injury. *See Bullocks v. Hale*, No. 1:18-CV-288, 2019 WL 2233095, at *6 (S.D. Ohio May 23, 2019), *report and recommendation adopted as modified*, 478 F. Supp. 3d 639 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021) (stating that the plaintiff's Eighth Amendment claim was permitted to proceed beyond screening because he alleged a "permanent injury" to his hand); *Cleare v. Jenkins*, No. 2:15-CV-2295, 2016 WL 3458193, at *4 (S.D. Ohio June 24, 2016), *report and recommendation adopted*, No. 15-CV-2295, 2016 WL 4480660 (S.D. Ohio Aug. 25, 2016) (noting that if the plaintiff amended his complaint to include allegations of other corrections officers bending his wrist and hands while handcuffed to the breaking point, he would state a claim upon which relief could be granted).

Defendants cite *McDougald v. Erdos* for the proposition that "allegations that plaintiff's arms, wrists and fingers were 'bent excessively' while forcibly escorted against his will was [sic] insufficient as a matter of law to state an Eighth Amendment Claim." (Doc. 21 at 10 (quoting 2018 WL 2388400 (S.D. Ohio May 25, 2018) *report and recommendation adopted*, No. 1:17-CV-00464, 2018 WL 4573287 (S.D. Ohio Sept. 25, 2018))). But there are several notable differences between the allegations in *McDougald* and those here. In *McDougald*, the plaintiff alleged that he felt just "momentary pain" as a result of his arms, wrists, and fingers being bent during his escort to receive a blood withdrawal. 2018 WL 2388400, at *3. Further, the only lasting injuries he alleged were swelling and lacerations resulting from excessively tight handcuffs, not from the bending of his wrists and fingers. *Id.* Conversely, Plaintiff alleges that the bending of his fingers

resulted in an instant dislocation and break of his finger, and that the effects of the injury are ongoing. These differences warrant different results.

Finally, while the Undersigned understands this claim as only being against Defendant Lendsey, to the extent Plaintiff seeks to state a claim against Defendant Tedesco for the bending of his fingers backwards, that claim fails. Plaintiff does not allege that Defendant Tedesco bent his fingers backwards nor that he possessed a culpable state of mind. Thus, Plaintiff fails to satisfy both the subjective and objective prongs regarding Defendant Tedesco.

In sum, Plaintiff has stated an Eighth Amendment claim for excessive force against Defendant Lendsey for bending Plaintiff's fingers backwards. Plaintiff, at this stage, has satisfactorily alleged that Defendant Lendsey had a culpable state of mind and inflicted sufficiently serious harm.

*2. Hands pulled through cuff-port*

In Plaintiff's second claim, he alleges Defendants Lendsey and Tedesco used excessive force when they pulled his hands through a cuff-port. (Doc. 20, ¶ 6–7). Despite initially refusing to give them his handcuffs, eventually Plaintiff "surrendered the handcuffs[.]" (*Id.*). Plaintiff says Defendants hurt his wrists, and he says the incident resulted in swelling in his right thumb. (*Id.*, ¶ 6, 8). Defendants move to dismiss the claim because Plaintiff's allegations do not satisfy the subjective or objective components of an Eighth Amendment excessive force claim. (Doc. 21 at 7–11). The Undersigned agrees.

Plaintiff does not satisfy the subjective component. He makes no allegations regarding Defendant Lendsey's or Defendant Tedesco's states of mind during this encounter. (*See* Doc. 20, ¶¶ 6–8). And upon evaluation, it appears the force Plaintiff alleges "was applied in a good faith effort to maintain or restore discipline" not to "maliciously and sadistically" cause Plaintiff harm. *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 6). Plaintiff's version of events indicates

he refused to cooperate and allow Defendants to remove his handcuffs, which they presumptively must do when returning him to his cell. Because Plaintiff refused to do so willingly, Defendants used force to pull Plaintiff's hands through the cuff-port to remove his handcuffs. Plaintiff does not allege, and from his allegations the Undersigned does not find, that the force used was disproportionate. Accordingly, the Undersigned concludes this use of force was in good faith and not to maliciously harm Plaintiff. *See Hudson*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986) (listing factors to use to determine subjective component)).

Plaintiff also fails to establish the objective component. He says that while Defendants were pulling his hands through the cuff-port, it hurt his wrists. (Doc. 20, ¶ 6). He later says the thumb on his right hand was swollen. (*Id.*, ¶ 8). Because the previous incident involved his left hand, the Court construes this alleged harm to be a result of the cuff-port incident. So Plaintiff's alleged injury is that he suffered momentary pain and temporary swelling. Neither of these harms are sufficiently serious as to go beyond "'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 104); *see also Jones Bey v. Johnson*, 248 Fed. App'x. 675, 677 (6th Cir. 2007) (finding that the plaintiff's wrist injuries of pain and swelling were so slight that even if true they are *de minimis*); *Bullocks*, 478 F. Supp. 3d 648 (S.D. Ohio 2020), *aff'd*, No. 20-3428, 2021 WL 1578198 (6th Cir. Mar. 1, 2021) (finding swelling and bruising to be relatively minor injuries that do not satisfy the objective prong for excessive force).

In sum, Plaintiff's allegations regarding the cuff-port incident, even when construed in his favor, fail to state a claim for excessive force under the Eighth Amendment. Accordingly, the Undersigned **RECOMMENDS** dismissal of the claim.

*3. Pepper-spray in isolated cell*

In Plaintiff's final excessive force claim, he alleges Defendant Lendsey put him in an isolated cell, where he was pepper-sprayed and then forced to sleep with pepper spray on him and

with no water or belongings. (Doc. 20, ¶ 11). The Court construes Plaintiff's allegation to be that Defendant Lendsey pepper-sprayed him, although that is not entirely clear from his Amended Complaint. *See Haines*, 404 U.S at 520 (stating that pro se complaints are held to "less stringent standards"). Importantly, Defendants do not move to dismiss this claim; accordingly, it survives. But even if Defendants' Motion (Doc. 21) could be interpreted as applying to this claim, Plaintiff has pled enough to satisfy the subjective and objective components of an excessive force claim.

Plaintiff satisfies the subjective component. He alleges Defendant Lendsey pepper-sprayed him and left him in an isolated cell "to further punish[]" him. (Doc. 20, ¶ 11). Defendant Lendsey's actions, if true, suggest that the force used was unnecessary and was not applied in a good faith effort to maintain or restore discipline, but rather to cause harm. *See McDougald v. Bear*, No. 1:17-CV-124, 2017 WL 5178764, at *2 (S.D. Ohio Nov. 7, 2017), *report and recommendation adopted sub nom. McDougald v. Baer*, No. 1:17CV124, 2017 WL 5990121 (S.D. Ohio Dec. 4, 2017) (finding that plaintiff's allegation that defendant pepper-sprayed his face at close range when he was doing nothing wrong satisfied the subjective component of an excessive force claim under the Eighth Amendment). At this stage, Plaintiff's allegation is sufficient to establish Defendant Lendsey's culpable state of mind and thus satisfies the subjective component of this excessive force claim.

Likewise, Plaintiff has sufficiently pled the objective component. He states he was forced to sleep with pepper spray on him and he had no access to water or his belongings. This lack of access to water or his belongings, presumptively made it difficult, if not impossible, for Plaintiff to wash himself, or mitigate the effects of pepper spray. "The seriousness of the injuries are not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated ... whether or not

significant injury is evident.'" *Williams*, 631 F.3d at 383 (quoting *Hudson*, 503 U.S. at 9). Among these unnecessary and wanton inflictions of pain, are those totally without penological justification. *Rafferty*, 915 F.3d at 1094 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)).

When construed in a light favorable to Plaintiff, the allegation is that Defendant Lendsey pepper-sprayed him while he was in an isolated cell. If Plaintiff was confined within a cell, it is difficult to imagine what good-faith need to maintain order would be served by pepper-spraying him. On its face, the allegation has no penological justification. Rather, it appears it was unnecessary infliction of pain. This violates "contemporary standards of decency," and thus the allegation is sufficiently serious as to satisfy the objective component of an excessive force claim.

In sum, Plaintiff has stated an Eighth Amendment claim for excessive force against Defendant Lendsey for pepper-spraying him and leaving him in an isolated cell overnight covered in pepper-spray with no water or belongings. Plaintiff, at this stage, has satisfactorily alleged that Defendant Lendsey had a culpable state of mind and inflicted sufficiently serious harm.

*****

All told, Plaintiff has successfully stated two excessive force claims, but failed to state another. Plaintiff's allegations against Defendants Lendsey and Tedesco for pulling his hands through the cuff-port fails to state a claim. Accordingly, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 21) regarding the cuff-port incident be **GRANTED**. This is the only allegation against Defendant Tedesco, and thus it is recommended that he be terminated from the case. But Plaintiff has stated two Eighth Amendment claims for excessive force against Defendant Lendsey for bending his fingers backwards and pepper-spraying him. Because Defendant Lendsey asserts qualified immunity, the analysis is not over.

**D. Qualified Immunity**

The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

Courts use a two-prong test to resolve claims of qualified immunity. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (citing *Austin v. Redford Twp. Police Dep't*, 690 F.3d 490, 496 (6th Cir. 2012)). First, a Court must determine if "the facts alleged make out a violation of a constitutional right." *Id.* Second, a Court must determine whether "the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct" constituted a constitutional violation. *Id.*

Defendants raise the defense of qualified immunity for Plaintiff's claims that Defendant Lendsey bent his fingers backwards and that Defendants Lendsey and Tedesco pulled his hands through the cuff-port. They argue, that even if Plaintiff establishes a constitutional violation, Defendants did not violate a clearly established right. Thus, they are entitled to qualified immunity. (Doc. 21 at 14). Notably, they do not argue qualified immunity for the pepper-spray incident.

The Undersigned has already concluded that Plaintiff failed to state a constitutional claim for the cuff-port incident. Regarding the injury to Plaintiff's finger, Defendant Lendsey argues that even if there was a constitutional right, it was not clearly established. He says "any reasonable official in [his] position would understand that applying *de minimis* force to restore discipline to

an insubordinate inmate is not a constitutional violation." (Doc. 21 at 14). But, taking Plaintiff's allegations as true, Defendant Lendsey intentionally bent his fingers back to the point of breaking a bone despite Plaintiff not resisting and while his hands were cuffed behind his back. (Doc. 20, ¶¶ 3, 5). As already explained, Plaintiff has pled more than a *de minimis* injury. Because Defendant Lendsey's qualified immunity defense relies on Plaintiff's injury being *de minimis*, it lacks merit.

Further, the Undersigned finds that when taking Plaintiff's allegations as true, he has alleged a violation of a clearly established right. It is sufficiently established that it would be unconstitutional to intentionally cause pain by bending to the point of breaking Plaintiff's fingers when he is not resisting and is in handcuffs. *See Manley v. Hughes*, No. 18-CV-1431, 2019 WL 7343250, at *5 (N.D. Ohio Dec. 31, 2019) ("[A]ny reasonable officer would know that intentionally grabbing an inmate's finger—such that it causes a significant injury—while his hands were handcuffed behind his back, is a violation of the inmate's constitutional rights.").

Finally, the Undersigned notes that Defendant Lendsey does not raise the defense of qualified immunity for Plaintiff's claim regarding pepper spray. (*See* Doc. 21 at 12–14). Because the Undersigned determined Plaintiff's allegations successfully state a claim and Defendant Lendsey does not raise qualified immunity with respect to the claim, it survives the Motion to Dismiss (Doc. 21). But, even if qualified immunity was raised for the claim, it is clearly established that spraying a prisoner with pepper spray solely for the purpose of punishment violates a prisoner's right to be free from excessive force. *See Batson v. Hoover*, 355 F. Supp. 3d 604, 615 (E.D. Mich. 2018), *aff'd*, 788 F. App'x 1017 (6th Cir. 2019) (finding that the unprovoked use of pepper spray on a prisoner not causing any disturbance and with no disciplinary justification

violates a clearly established right); *Bear*, 2017 WL 5178764, at *3 (denying a request for qualified immunity because pepper-spraying a compliant prisoner violates clearly established law).

In sum, Defendant Lendsey's qualified immunity argument fails at this stage. It is recommended that Plaintiff's Eighth Amendment claims against him regarding the finger injury incident and the pepper spray incident be allowed to proceed.

## IV. CONCLUSION

For the above reasons, it is **RECOMMENDED** that Defendants' Motion to Dismiss (Doc. 21) be **GRANTED IN PART and DENIED IN PART**. It is **RECOMMENDED** that any claims Plaintiff asserts against Defendants Lendsey and Tedesco in their official capacity be **DISMISSED**. It is **RECOMMENDED** that Plaintiff's Fourteenth Amendment claims against Defendants Lendsey and Tedesco be **DISMISSED**. It is **RECOMMENDED** that Plaintiff's Eighth Amendment claim against Defendants Lensdsey and Tedesco regarding the cuff-port incident be **DISMISSED**. It is **RECOMMENDED** that Plaintiff's Eighth Amendment claims against Defendant Lendsey regarding the finger injury incident and the pepper spray incident be allowed to proceed.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.

Date: September 23, 2022

s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE