**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TROY D. MCRAE, JR.,**

      **Plaintiff,**

  v.

**LT. LENDSEY, et al.,**

      **Defendants.**

      **Civil Action 2:21-cv-4752
Judge Michael H. Watson
Magistrate Judge Kimberly A. Jolson**

<u>**REPORT AND RECOMMENDATION**</u>

This matter is before the Court on cross-motions for summary judgment. For the following reasons, the Undersigned **RECOMMENDS** Defendant Lendsey's Motion (Doc. 37) be **GRANTED** and Plaintiff's Motion (Doc. 36) be **DENIED**.

**I.    BACKGROUND**

Plaintiff, who is proceeding without the assistance of counsel, alleges that Defendants violated his constitutional rights while he was incarcerated at Ross Correctional Institute ("RCI"). (*See generally* Doc. 20).

On July 15, 2021, Plaintiff attended a Rules Infraction Board hearing to resolve a conduct report against him. (Doc. 20, ¶ 1). Plaintiff wanted the opportunity to show that he did not break a rule and thought the individual who could best explain what happened, Captain Yates, would attend. More specifically, Plaintiff believed Captain Yates would provide video footage that would confirm Plaintiff's telling of what happened. (*Id.*). But when Captain Yates did not appear, Plaintiff became disruptive, falling to his knees and pleading that Captain Yates come to the hearing. (*Id.*). In response, Defendant Lendsey picked Plaintiff up off the floor and used force to escort Plaintiff back to his cell. (*Id.*, ¶ 2; Doc. 37 at 54). In the process of escorting him to his cell, Plaintiff claims Defendant Lendsey "bent [his] third digit finger back until he had broken it."

(Doc. 36 at 4). He says Defendant Lendsey "took hold of [his] fingers and began to bend them backward in an attempt to inflict pain on [Plaintiff]." (Doc. 20, ¶ 5). And, during the entire sequence of events, Plaintiff says his hands were "cuffed behind [his] back[.]" (*Id.*, ¶ 3). Plaintiff was then returned to his cell. Shortly thereafter, a corrections officer saw Plaintiff "punching his cell door and kicking his door[,]" and "dismantle the sink[;]" "causing the cell to flood." (Doc. 37 at 48).

Plaintiff sought medical attention. (Doc. 20, ¶ 10). Nurse Michael Scott examined Plaintiff's hand in the infirmary and ordered an x-ray of his left hand and wrapped it in an ace bandage after observing some swelling. (Doc. 37 at 56). The x-ray showed "no radiographic evidence of acute fracture" and "no dislocation." (*Id.* at 41).

After his medical visit, Plaintiff says Defendant Lendsey placed him in an isolated cell, to "further punish[ ]" him. (Doc. 20, ¶ 11). Plaintiff was then pepper-sprayed. Defendant Lendsey asserts that a non-defendant, Corrections Officer Barry Tanner pepper-sprayed Plaintiff after Plaintiff refused to hand over an object he was using for self-harm. (Doc. 37 at 25). But Plaintiff alleges Defendant Lendsey pepper-sprayed him and then forced him to go without water or his belongings overnight. (Doc. 38 at 7; *see also* Doc. 20, ¶ 11).

Later, Plaintiff was transferred to Ohio State Penitentiary, where he had another x-ray of his left hand. (Doc. 37 at 45). This x-ray likewise showed no evidence of fracture, dislocation, soft tissue swelling, or abnormalities. (*Id.*). Yet Plaintiff says he still experiences ongoing pain in his left hand, "his hand has healed in the broken position[,]" and he "can no longer make a tight fist[.]" (Doc. 20, ¶¶ 13, 15).

Plaintiff filed this lawsuit under 42 U.S.C. § 1983, alleging various constitutional violations against multiple defendants. (Doc. 22). The Court dismissed most of Plaintiff's claims but

permitted his Eighth Amendment claims related to the events on July 15, 2021—the finger injury and the pepper-spray incident—against Defendant Lendsey (hereinafter "Defendant") to proceed under § 1983. (Docs. 26, 30). Plaintiff moved for summary judgment in advance of the discovery or dispositive motions deadline and without any support for the Motion, which the Court denied without prejudice. (Docs. 34, 35). Plaintiff again moved for summary judgment (Doc. 36), as did Defendant (Doc. 37). Both Motions are ripe for review.

## II.  STANDARD

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriately entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When a defendant shows there is insufficient evidence to support any element of the plaintiff's claim and moves for summary judgment, the burden shifts to the plaintiff to demonstrate a genuine issue for trial on which a reasonable jury could return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Evidence is viewed in the light most favorable to the nonmoving party, meaning that "any direct evidence offered by the [nonmovant] in response to a summary judgment motion must be accepted as true." *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004), *citing Liberty Lobby*, 477 U.S. at 251–52, and *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). Ultimately, the Court asks, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

## III.  DISCUSSION

3

Plaintiff brings claims arising under the Eighth Amendment to be free from cruel and unusual punishment. (*See* Doc. 20). Particularly, he alleges that Defendant violated his civil rights by: (1) using excessive force in injuring his finger; and (2) using excessive force by pepper-spraying him. Defendant argues that Plaintiff's case fails procedurally because Plaintiff failed to exhaust administrative remedies and on the merits.

### A. Exhaustion of Administrative Remedies

Defendant seeks dispositive relief because he says Plaintiff failed to exhaust his administrative remedies. (Doc. 37 at 14–16). Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *see also Fazzini v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006). The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). Proper exhaustion demands that a prisoner "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

Plaintiff is currently incarcerated, and he was incarcerated when this lawsuit was filed. (Complaint, Doc. 5). Consequently, the PLRA's exhaustion requirements apply. The Ohio inmate grievance procedure involves "three consecutive steps": First, "the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." Ohio Admin. Code § 5120-9-31(J)(1). Second, "[i]f the inmate is dissatisfied with the informal complaint response, or the informal complaint process has been waived, the inmate may file a notification of a grievance with the inspector of institutional services." Ohio Admin. Code § 5120-9-31(J)(2). Third, "[i]f the inmate is dissatisfied

4

with the disposition of grievance, the inmate may file an appeal with the office of the chief inspector." Ohio Admin. Code § 5120-9-31(J)(3).

Plaintiff failed to comply with those requirements here. (*See* Doc. 37 at 60–62 (detailing Plaintiff's failure to comply with the inmate grievance procedure). Specifically, Plaintiff did not wait for a response to his informal complaint but instead procedurally moved to step two only three days after filing the informal complaint. (*Id.*). While Plaintiff seemingly filed his grievance in error as he used it to thank the reviewers of the complaint, he did not correct this mistake when he was made aware of it. (*Id.* ("The grievant has utilized step 2 to 'thank' the staff member for the response of his informal complaint. This office will take no action in this complaint."). Plaintiff offers no argument or evidence to contest this fact. (*See generally* Doc. 38). Courts have been clear that "[a] plaintiff's failure to exhaust cannot be excused by his ignorance of the law or the grievance policy." *Bridgmon v. Biery*, No. 3:10-CV-02735, 2011 WL 6415530, at *3 (N.D. Ohio Dec. 21, 2011) (citations omitted). This is so because permitting Plaintiff to bypass the PLRA's exhaustion requirement "would defeat" its statutory purpose: "to promote administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court." *Bridgmon*, 2011 WL 6415530, at *3 (citations omitted). Accordingly, Plaintiff failed to exhaust, and his Complaint against Defendant should be dismissed.

### B. Merits

Although exhaustion requires dismissal, such a dismissal would be without prejudice. Consequently, the Undersigned will address Defendant's additional arguments that summary judgment should be granted on the merits. Specifically, Defendant argues that Plaintiff had no cognizable finger injury and Defendant had no personal involvement in the pepper-spray incident.

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain." *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d

5

1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "The objective component requires the pain inflicted to be sufficiently serious." *Id.* (citation and quotations omitted). This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"The subjective component requires that the prison official act with a 'sufficiently culpable state of mind.'" *Rafferty*, 915 F.3d at 1094 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In analyzing this component, courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," courts consider a number of factors, including: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Id.* (citation and quotations omitted).

      i.    *Finger Injury Incident*

Defendant says he is entitled to summary judgment for the finger injury claim, because Plaintiff has failed to establish both the objective and subjective components of an Eighth Amendment excessive force claim. (Doc. 37 at 8–13). The extent of a plaintiff's injury is relevant to analyzing an excessive force claim under the Eighth Amendment: It "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular

6

situation," and it "may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

> [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Id.* 37–38 (internal citations and quotations omitted). But injury and force are only "imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38. Indeed, contemporary standards of decency are always violated when prison officials maliciously and sadistically use force to cause harm. *Hudson*, 503 U.S. at 9.

Ultimately, whether a defendant's use of force is excessive is a fact intensive inquiry. *See Hudson*, 503 U.S. at 7 (discussing factors for courts to consider). Lower courts' decisions demonstrate as much. *See, e.g.*, *Alspaugh v. McConnell*, 643 F.3d 162, 168–69 (6th Cir. 2011) (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when two correctional officers beat him); *Griffin v. Hardrick*, 604 F.3d 949, 954–56 (6th Cir. 2010) (concluding, under the Due Process clause, that correctional officer's leg sweep that resulted in a pre-trial detainee fracturing her tibia was not excessive where pretrial detainee "was acting in a noncompliant manner" and "was clearly struggling against" correctional staff); *Goudlock v. Dana Blankenship*, No. 1:13-CV-1215, 2016 WL 3668008, at *6 (N.D. Ohio July 11, 2016), aff'd sub nom. *Goudlock v. Blankenship*, No. 16-3879, 2017 WL 7116970 (6th Cir. Sept. 12, 2017) (citation and quotations omitted) (collecting cases) ("Even assuming that defendants used some force

7

against plaintiff after he was handcuffed, plaintiff has produced no evidence of a discernible injury. In the absence of any evidence of a discernible injury, plaintiff cannot show that defendants' use of force was more than de minimis, and no reasonable jury could conclude based upon the undisputed facts that the pain and suffering inflicted by defendants was sufficiently serious to offend contemporary standards of decency."). The Undersigned has therefore carefully reviewed the factual record, including the parties' proffered affidavits, Plaintiff's medical records, photographic evidence, and the contemporaneous reports of correctional staff.

On July 15, 2021, Plaintiff alleges that Defendant "took [Plaintiff] by the hand while [Plaintiff] was handcuffed behind the back, and maliciously, and sadistically, bent [Plaintiff's] third digit finger back until he had broken it" while escorting Plaintiff back to his cell. (Doc. 36 at 4). That same day, a corrections officer saw Plaintiff "punching his cell door and kicking his door[,]" and "dismantle the sink . . . ." (Doc. 37 at 48 (conduct report dated July 15, 2021)). After Plaintiff complained of hand pain, he went to the infirmary where Nurse Michael Scott examined his swollen hand, wrapped it in a bandage, and ordered an x-ray. (*Id.* at 42–44 (physical examination report dated July 15, 2021)). The x-ray showed "no radiographic evidence of acute fracture" and "no dislocation." (*Id.* at 41). Plaintiff was later transferred to Ohio State Penitentiary, where he had another x-ray of his left hand. (Doc. 37 at 45). This x-ray again showed no evidence of fracture, dislocation, soft tissue swelling, or abnormalities. (*Id.*).

On the record before the Court, Plaintiff cannot satisfy the objective component of an Eighth Amendment excessive force claim. Plaintiff says he experiences ongoing pain in his left hand, "his hand has healed in the broken position[,]" and he "can no longer make a tight fist[.]" (Doc. 20, ¶¶ 13, 15). But other than his vague, self-serving declarations, the record does not support a finding that the force used was "repugnant to the conscious of mankind," *Wilkins*, 559

8

U.S. at 38 (citation and quotations omitted). There is no evidence that Plaintiff suffered a discernible injury as a result of Defendant's use of force. To the contrary, the record shows that there was no meaningful injury. As a result, Defendant is entitled to summary judgment. *Goudlock*, 2016 WL 3668008, at *6 (citation and quotations omitted) (collecting cases) ("Even assuming that defendants used some force against plaintiff after he was handcuffed, plaintiff has produced no evidence of a discernible injury. In the absence of any evidence of a discernible injury, plaintiff cannot show that defendants' use of force was more than de minimis, and no reasonable jury could conclude based upon the undisputed facts that the pain and suffering inflicted by defendants was sufficiently serious to offend contemporary standards of decency."); *Rogers v. Shostak*, No. 1:14CV213, 2015 WL 3604057, at *9 (S.D. Ohio June 5, 2015) ("Thus, accepting as true plaintiff's sworn deposition testimony that defendant used force against him on September 11, 2013, by punching him hard in the chest and pushing him back into his bed, plaintiff has nonetheless failed to produce sufficient evidence to establish his Eighth Amendment claim. The evidence shows that defendant's actions constituted a *de minimis* use of force which caused plaintiff to suffer no discernible injury requiring medical treatment of any kind. Accordingly, there is no genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law.").

Still more, Plaintiff has failed to demonstrate that Defendant had a culpable state of mind. Plaintiff admitted that he "laid outside the [Rules Infraction Board] door and [Defendant] carried [Plaintiff] to [Plaintiff's] cell." (Doc. 37 at 54 (Testimony of Accused Inmate at Rules Infraction Board)). He admitted that he "fell to the floor, lying face down, demanding that either Captain Yates or the Warden be called" after being escorted out of the Rules Infraction Board meeting. (Doc. 20, ¶ 3). At that point, Defendant escorted Plaintiff back to his cell. And Plaintiff has not

offered any evidence that Defendant had malicious or sadistic intent to cause Plaintiff harm in doing so. Based upon the record before the Court, Plaintiff has failed to establish the subjective component of an Eighth Amendment excessive force claim.

   ii. *Pepper Spray Incident*

Plaintiff claims that he was pepper-sprayed, in violation of his constitutional rights. Defendant responds that Plaintiff has failed to establish the subjective component necessary to proceed under the Eighth Amendment because he never pepper-sprayed Plaintiff. (*See* Doc. 37 at 6–7). Personal involvement is required for a successful claim under 42 U.S.C. § 1983. *See Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)) ("Liability cannot be established absent a clear showing that the defendants were personally involved in the activity forming the basis of the alleged unconstitutional behavior."); *see also McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995) (stating that "[w]hen a claim to qualified immunity arises in the context of a motion for summary judgment," the court should "first decide whether a plaintiff has stated a section 1983 claim against the individual defendants").

As it relates to the pepper spray incident, Plaintiff alleges that Defendant pepper-sprayed him but fails to substantiate this allegation with any evidence. (*See* Doc. 38 at 7–8). Defendant asserts that Officer Tanner deployed the pepper-spray. (Doc. 37 at 6). And the record supports this. Officer Tanner filed a use of force report on July 15, 2021, summarizing that he used 66 grams of pepper spray on Plaintiff after he "raised his arms up and showed [Officer Tanner] where he cut himself and also stated that he was going to kill himself." (*Id.* at 29 (Use of Force Report)). The record shows that Officer Tanner's account of the events was reviewed by the shift supervisor (Defendant), the managing officer, and the Chief of Security. (*See id.* at 25–28). Neither Plaintiff nor Defendant have brought forth any evidence of Defendant pepper-spraying Plaintiff.

Plaintiff says all of this evidence, a total of four reports recounting and reviewing the pepper-spray incident, is fabricated. More specifically, he says that "Defendant used an incident report from Barry Tanner to try and cover up his wrongdoing. . . . Barry Tanner's report . . . was a lie." (Doc. 38 at 7). He says that Officer Tanner's incident report is clearly not true because "there is nowhere in the report where Barry Tanner said that he had recovered any type of weapon or instrument that Plaintiff was supposedly used to cut himself." (*Id.* at 7–8). But again, Plaintiff's accusations are not substantiated by any evidence. (*See* Doc. 36 at 3–6 (Plaintiff's "Affidavit" not stamped by a notary public)). And Plaintiff's assertion is contradicted by his prior statements: "I wanted ibuprofen and no one was listening so I started cutting myself." (Doc. 37 at 32 (Plaintiff's statement on medical exam report dated July 15, 2021)). As such, Plaintiff has not adequately rebutted Defendant's claim that he was not personally involved in the pepper-spray incident.

Even if Plaintiff were to suggest that Defendant had some supervisory authority over Officer Tanner and inadequately supervised his subordinate, that is not enough. Government officials may not be held liable for the unconstitutional conduct of their subordinates under theories of respondeat superior or vicarious liability. Instead, a claimed constitutional violation must be based upon active unconstitutional behavior. So the acts of one's subordinates are insufficient, nor can supervisory liability be based upon the mere failure to act. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

More than once, the Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*,

11

199 F.3d 295, 300 (6th Cir. 1999) (internal quotation marks omitted). This means that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo*, 423 U.S. 362 at 375–76, and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

While Defendant was the shift supervisor on July 15, 2021, and did review Officer Tanner's incident report (*see* Doc. 37 at 28 (Supervisor's Use of Force Summary Report)), that is not enough for Defendant to be liable under § 1983. Since Plaintiff has not shown that Defendant "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers[,]" *Peatross*, 818 F.3d at 242, Defendant is entitled to summary judgment for the pepper-spray incident.

### C. Qualified Immunity

Beyond challenging the merits of Plaintiff's constitutional claims, Defendant has asserted qualified immunity as a defense. And, while the Undersigned recommends that Defendant's Motion for Summary Judgment (Doc. 37) be granted for each of Plaintiff's claims, Defendant is also immune from liability. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Taylor v. Riojas*, —— U.S. ——, 141 S.Ct. 52, 53, 208 L.Ed.2d 164 (2020). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "The contours of the

[violated] right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Since the Defendant has raised the qualified immunity defense, Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012)).

Qualified immunity is proper when either the officer's behavior was not constitutionally violative or the officer acted reasonably in a way which they did not believe violated any constitutional rights. *Taylor*, 141 S. Ct. at 53. As described above, no constitutional violation has occurred.

## IV. CONCLUSION

For the above reasons, it is **RECOMMENDED** that Defendant Lendsey's Motion (Doc. 37) be **GRANTED** and Plaintiff's Motion (Doc. 36) be **DENIED.**

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report

13

and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

    IT IS SO ORDERED.

Date: July 27, 2023                                                      s/ Kimberly A. Jolson
                                                                               KIMBERLY A. JOLSON
                                                                               UNITED STATES MAGISTRATE JUDGE